Good morning, my name is Tiffany Lee and I represent the United States. On May 14, 2022, armed with a rifle and a GoPro camera to live stream his conduct, Peyton Gendron traveled to the top supermarket in Buffalo, New York, and committed a mass shooting, targeting black people, resulting in the death of his wife, Tiffany Lee. The District Court here erred when struck the following non-statutory aggravating factors for which the government had provided notice. One, that Gendron expressed bias, hatred, and contempt towards black persons, and his animus towards black persons played a role in the killings. Two, that he caused serious physical and emotional injury and severe psychological impact to the three individuals who survived the offense. And three, that he, in preparation and committing the acts of violence, attempted to incite violent action by others. The District Court's striking of these three aggravating factors essentially, effectively precludes the government from offering information to the sentencing jury, the specific factors distinguishing his conduct, which make his particular conduct more blameworthy in order to warrant death as the penalty. The District Court's rationale stems from a misreading of the Federal Death Penalty Act to read contradictions in law which do not exist, and from a misapplication of First Amendment jurisprudence. So let's begin by looking at the two statutory provisions at play here. The first is Section 3592. That provides the what. It enumerates, as the title states, the statutory aggravators and mitigators to be considered in determining whether a sentence of death is justified. Importantly, it also allows the jury to consider whether any other aggravating factor for which notice has been given exists. Section 3593 provides for the how. It is a step-by-step roadmap on how the selection phase of a capital sentencing proceeding is to be conducted. It starts with A, in terms of the notice that the government must give, and then continues down in order with the hearing, the proof, and the findings, and then ultimately ends with a specific charge to the jury to ensure that their selection is not based on any bias on their part. So let's turn to the district court striking of the racially motivated killings factor first. Section 3593F does not prohibit the government from alleging, as an aggravator, that Gendron possessed a racist motive, and that a racist motive played a role in his commission of the offense. Can I ask a practical question? To the extent that there is a line, an evidentiary line, to be drawn between racial bias as a motivating aggravator and consideration of race impermissibly, would the government seek instruction, limiting instruction, or direction to the jury as to how to go about understanding that? I think that we believe that the juries are fully capable of understanding the distinction between an aggravator that is key to the defendant's racism and their own duty not to look at the case and to select a sentence of death because of the race of the defendant or because of the race of the defendant. So you wouldn't seek any further clarification for the jury? I mean, does the government worry that there might be confusion between the aggravator and the verification requirement such that you would want to help the jury understand the distinction? No. And, in fact, you know, juries have shown their understanding with their verdicts and their certifications in the Dillon-Roof case, which involved the shooter of the South Carolina Black Church, and also in the Robert Bowers case, which involved... Well, what's the harm in giving an instruction? You may think that they'll understand it conceptually, but what would be the harm to ensuring? It's a pretty important point in ensuring by giving some type of instruction. You're saying in those two cases there was no instruction to the jury of how it's consistent with the verification to consider racial bias? No. According to one of my team members here who works on capital cases, there was no instructions given in that regard with respect to the Dillon-Roof or the Robert Bowers case. What would the harm be to give that instruction? I agree with you, Judge Bianco, that there may not be a harm, but the reality is if you look at 3593D, basically that's a charge that in the return of the special findings pursuant to the aggravators, the jury shall consider all the information received during the hearing. Really, the certification prong of 3593F... The lack of instruction actually hurt the government, because a juror could be, could say, look at the verification that race, you know, the race of the victim or the defendant didn't play any role, and potentially try to tell the other jurors, like, we shouldn't consider the racial motive, right? No, but that basically... The instruction might help both sides. It's basically, it's information for both sides, mitigators and aggravators, and that's the whole point of, that's the principal part of when it comes to capital sentencing, is we want all the information, relevant information, pursuant to sentencing to be before the sentencing court. Well, I mean, I think there's, it's all, I suppose the devil's in the details, but it seems to me that 3593F prohibits the jury from considering the race of the defendant or any victim, right? That's pretty explicit. If we agree that the motivation is relevant and the jury can be instructed on motivation as an aggravator, it seems to me that, nonetheless, the way you've written the factor here sort of invites the jury to be focused on the race of the victims. And it seems to me you could have written it a little differently to make less of a tension between 3593F and, I think, your permissible objective of getting the jury to focus on what were the motivations for the crime. You just said gendered expressed racial bias, hatred, contempt, and animus, which played a role in the killings. That doesn't highlight the fact that the victims are all black here. I mean, look, at the end of the day, the jury is not dumb and they're going to get this. But it seems to me you're, there's a concern that the way you've written the factor here, it's basically directing the jury and the district court to disregard 3593F. No. Would there be any objection to rewriting it the way I proposed? Would that make a difference in your mind? Okay. All right. There would be no objection to rewriting, you know, that specific aggravating factor to the extent that there is any concern. I will note, though, in terms of the procedural ‑‑ So the jury, just imagine the judge saying, look, ladies and gentlemen of the jury, you are not to consider the race of the defendant or any victim, but you are permitted to consider that all the victims were black and that that was a motivation. Or something along the lines of ‑‑ It doesn't seem to invite confusion, doesn't it? No, I don't think so because of the fact that what we're saying is Dendren's actions was motivated by his own race and his own hatred towards black people. Juries, when you are at that phase of whether or not you're selecting death, you need to look within yourself and check your own internal racism. That is what that precaution is all about. It's to ensure ‑‑ Justice Sotomayor's point is if you don't use the particular race in the way you phrase it, it's less likely they could have some type of confusion. If you say you can consider the fact that he was racially motivated, he was motivated by racial hatred, it doesn't necessarily suggest that what the victim's race, what their particular race is, is relevant to that. It doesn't matter what their race is. If he's motivated to kill people of a certain race, and it turns out in a terrorist attack, it turns out people of a different race were killed, even though that was his motivation. He's still ‑‑ you can still consider what his motive was. And I understand your point. But I also believe that this ruling totally is kind of like it goes against the whole notion of basically the fact that the fact finders here, which is the selection jury, they get to see both sides in terms of all the aggravators and mitigators. And in a hate‑based capital offense, it would just seem strange that you do ‑‑ you're underestimating their abilities to follow the instructions and to understand these concepts. And as trial judges ‑‑ I guess the concern is that maybe you're underestimating the confusion that might flow from a clear prohibition of the 3593F and an aggravating factor that seems to invite the jury to do exactly that. No. If you simply said racial animus, any direction is an aggravating factor that you can consider, because it's different than greed, it's different than, you know, whatever, just wanton cruelty. It's different. You can consider it. That seems to me to avoid the problem that you seem to say, ah, it's an inevitable problem and not a big deal. Well, I'm not saying it's an inevitable. It is an inevitable problem here, though, because they are going to be seeing evidence in terms of, you know, the fact that Gendron is white and they are going to be seeing immutable facts that, you know, pictures from the crime scene all depict victims who are black. You know, those things are happening with the trial, with or without that aggravator. We're saying that the aggravator does not – this instruction is one in which juries can follow. Well, maybe. In much the same way. But also conclude from this factor that you're asking them to, which is that white on black violence is worse. It's a worse kind of violence because of the history of this country and racism, et cetera. And that they're not allowed to do, right? You would concede they're not allowed to do that, are they? No, they're allowed to – They're allowed to take into account the history of racism and the fact that killing a black victim because it's a black victim is worse than a racially motivated white victim? Correct. But what they cannot consider is when they are selecting death, they cannot look at the circumstances and say, I'm selecting death because you are black. I am selecting death because you are white. Which is – it is a distinction. There is a difference. We're saying that the – Could I – just to make sure I understood your response to Judge Sullivan. If the facts were different, if the defendant were black and the victims white, could you seek as an aggravator that Gendron expressed bias, hatred, contempt toward white persons and that his animus toward white persons played a role in the killings of the victims? Yes, absolutely.   And the jury – and so two parallel juries, or a jury, you know, considering two defendants if they were ever allowed to do that, could say I'm not that worried about black on white violence. I am very worried about white on black violence, and so therefore I'm going to give the death penalty to one and not the other. That would be consistent with 3593F in your mind? I think what's consistent with 3593F is – Well, just answer my question. I don't want to know what is consistent. I want to know whether that is consistent. I – it has to do with the – No, just answer that.  If you don't want to answer it – No, I do want – I do. I'm – So we'll now move on to Daniel Habib. Good morning, Your Honors. May it please the Court. Daniel Habib, Federal Defenders of New York on behalf of Peyton Gendron. The district court's order rested on the correct construction of the Federal Death Penalty Act and should be affirmed. I want to address the racially motivated killings aggravating factor in light of what I just heard to be some frankly astounding concessions by the government in this proceeding. It is the government's position in response to Judge Sullivan's question that it could argue that a white on black crime is worse than another kind of murder. It could argue in response to Judge Nathan's question that the victim's white race was a fact that made the crime more worthy of death. Those concessions let us know that the government's position is totally inconsistent with the text of 3593F, which expresses a very clear – Let's put aside what – those exchanges. The core argument is that a jury considering whether to impose the death penalty should be able to consider racial motivation. As a separate aggravating factor, if someone is motivated by race, regardless of what that race is, white, black, doesn't matter, that's more reprehensible for purposes of the death penalty and it should be able to be considered relevant as a separate aggravating factor. What's wrong with that? So this case doesn't present that – It doesn't matter what the victim's race is. It doesn't matter what the defendant's race is. If the motivation is race, that could be an aggravating factor. So this case doesn't present that abstract question. Nobody wants to answer questions today. Sure, Your Honor. No. Of course the Supreme Court held in Wisconsin v. Mitchell that elements of racial bias aren't constitutionally precluded from a sentencer's consideration. So if this aggravating factor said, Gendron expressed bias, hatred, and contempt on the basis of race and his racial animus played a role in the killings of and it named the victims who were killed, would you have this objection? That would be a different case and a harder case. But, yes, we would not concede that that instruction, that that aggravating factor would be proper, no. So you actually don't think racial bias can be an aggravating factor? I think in the context, let me place it in the context of this case and the specific language at issue. 3593F says the jury shall not consider race, period. I agree that the Supreme Court has said that there is no constitutional bar to the consideration. Hold on a second. It doesn't say that. It says the race of the victim or the defendant, right? That's true, Your Honor. Okay, but that's important. No, no, of course. You could have motivation. It doesn't matter what the race of the defendant or the victim is. Under this use of this evidence, it doesn't matter what the race of the defendant or the victim is. Under the statute, under the prohibition, it matters that he was motivated by that, right? My hypothetical that I mentioned to the government was if you have a terrorist attack where someone is motivated people of a certain race and threw a bomb and they bomb a building and it turns out the people are of a different race than they intended, you know, you could have this as an aggravating factor, right? Well, so let me explain my precise concerns with the aggravating factor that both Your Honors have posited. First, we did argue below that the aggravating factor – we objected on both statutory and constitutional grounds. We objected that the aggravating factor rested on Gendron's constitutionally protected beliefs, and the district court didn't resolve that constitutional objection. Second, before that aggravating factor could be presented to a jury, Section 3593A would require a number of steps. The government would have to seek leave from the district court to amend the notice of intent to allege a new non-statutory aggravating factor and would have to demonstrate good cause for doing so. Gendron would then be permitted to litigate that or that non-statutory aggravating factor in the ordinary course. But on the specific facts of this case, as illuminated by what the government has just now argued, we would have substantial concern that even a facially neutral aggravating factor, as Your Honor has posited, would inevitably implicate the very color-sensitive concerns that Congress was determined to excise from Federal sentencing. So you don't think a jury can be instructed on a distinction between race and racism? Or you said racist bias. Well, the government seems strenuously opposed to that possibility just now. And I think the reason why is what the government's — Well, you both seem opposed for sort of getting a little bit surprising categorical answers from both sides. Well, let me tell you, drilling into the facts of this case, Judge Nathan, why I think even a facially neutral instruction would be problematic. And it has to do with what the government described as, quote, the inevitable fact of this case that Gendron is white, that his beliefs were anti-black in nature and white supremacist in nature, and that all of his victims were black. Even a neutrally worded aggravating factor, in light of that inevitable fact, creates the risk, and in particular in light of the arguments the government has now floated that it would present to the jury, creates the risk, and absent limiting instruction, that — One of his — there were victims who were white but not killed. If someone who was white had been killed, then you think the aggravator would be fine because the jury wouldn't be taking into account the race of the victim, just the motivation. But the facts here would make the sort of jury unable to disaggregate. I don't know that the addition of one or two white victims in the context of this case would tip the balance. But to complete my answer to your earlier question, our specific concern on the facts of this case is, as the government has said, the specific race of Gendron and his victims is an inevitable fact that any juror will know. And asking the juror to consider — asking the jury to consider, even as to a facially neutral non-statutory aggravating factor, racist motivation, implicates the concerns that Congress was determined to purge from federal capitalism. You know why it would be difficult for a jury who's instructed you can't consider the race of the defendant or the victims is completely irrelevant, but you can consider whether or not the murderers were racially motivated. I just don't see that, if they were specifically instructed on that, how that's a difficult concept. I think we all understand that. I don't think a jury's going to have a problem understanding that. I mean, with respect — So we're dumber than a jury? Well, we've all engaged in instructing juries on rather fine and sometimes complicated lines as to permissible purposes of evidence. Since you have three former trial judges in front of you. Even if this is admittedly difficult, I'm surprised. And I'm surprised that this would be a line that couldn't be drawn. And I don't think — tell me if I'm wrong — I don't think the district court understood this. I don't think what you're saying is what the district court understood. I mean, in fact, the district court said, as framed by the government in the notice of intent, this factor is not about a general racist motive, but about bias and animus towards black persons. So the district court wasn't making the categorical move that you're making. I agree, because the district court was properly resolving our motion to strike the non-statutory aggravating factor as drafted by the government. And that's the question before this Court, whether that ruling should be affirmed. And so I would urge this Court, in resolving this question, if the — I would urge — So then, if it is — I mean, the reason it's relevant, because if it is permissible to instruct the jury that racial motivation is aggravating, then the question is, does the aggravator, as drafted and without further instruction, because the government has at least here foregone further instruction, is that — is it sufficiently different from a more carefully crafted, just racial bias version? Yes, it is sufficiently different because it draws express attention to the victim's race and clear contravention of 3593-F. Well — And I do — I mean, on its face, it doesn't tell us the race of the victims. It identifies the victims by name, and as Judge Sullivan has pointed out, and as the government has told us, it is inevitable that the jury will understand their race. But let me — let me say what I think the correct disposition is here. As I noted, the government has made some really, I think, totally incompatible with the text and congressional intent arguments here, that, for example, a jury could be instructed that a white on black crime is worse, that a jury could consider America's history of racism in drawing that conclusion, and that different juries might attribute different value or weight in aggravation to white on black versus black on white crimes. The government refuses an instruction to clarify this concept, and I think what we're seeing here is what a preview of this trial is going to look like if this aggravating factor proceeds. It's going to invite the very considerations of race that Congress was determined to excise. Congress wanted colorblind Federal capital sentencing. That is the unmistakable implication of 3593F, which says a jury shall not consider, shall not consider, shall not take into account the race of the victim. But there's no indication that Congress wanted to eliminate the consideration of racial animus in the death penalty case. There's no indication of that from that provision. Zero. And this is what you're suggesting. It's a different issue about what they're going to do during the trial, whether that creates other issues. But we're looking at, as a matter of law, whether or not a properly crafted aggravating factor that refers to racial animus is something that could be considered. Congress has never indicated that they don't want juries considering racial animus in a death penalty case. The Supreme Court has said it's okay multiple times. You said that at the beginning of your argument. In Congress, this statute does not say that. So, Your Honor, I think in light of that observation, I think what the district court did was correct. It struck the aggravating factor as drafted as incompatible with the statute, and this Court should affirm that ruling. If the government – I apologize, Judge Breyer. I was just going to point out, I mean, the predicate offense for the death-eligible count is a hate crime. Yes. Right? So, I mean, clearly Congress understands that hate crimes are, you know, are worse than other kinds of crimes that might have the same result. Yes. I think, yes, the underlying offenses do have as an element that gender and willfully cause bodily injury because of race. But what I would submit is this. The district court ruled on the aggravating factor as drafted by the government, and I think all three members of this Court have suggested problems with that aggravating factor as drafted. This Court is not in the business of rewriting aggravating factors on the government's behalf, and I think this Court would have to think long and hard about the separation of powers implications of doing that. The proper disposition here is to affirm the district court's ruling and that the government, if it wants to submit a different aggravating factor in the district court, can seek leave under 3593A to amend the notice of intent. That's all that's required to resolve this case. That's procedurally possible. Yes. If the government could demonstrate – But you would object that you can't draft – on the basis of racial bias, motivation for racial bias, without conflicting with the anti-discrimination provision. So I think it would be extraordinarily difficult in light of the inevitable facts of this case, as the government has put it, and I think that question would properly await resolution in the district court in the first instance, based on what – But wouldn't that be true of virtually any case that involves a racial animus? I mean, there may be some situations, like Judge Bianco hypothesized, where the racial motivation is what drove the act, but the act was sort of clumsily done and killed people of a different race or the defendant's own race. But most of the time, it would seem to me, that such a racial animus will lead to death-eligible counts where the victim does, in fact, fall into the racial group where the animus is directed. That may or may not be true. Your view is that as long as that's the case, then you don't get this can't be an aggravator? No, Your Honor. We're not pressing that categorical rule. And I think in the case that Judge Bianco has posited, that risk would be fairly minimal because there would not be evidence that the race of the victims corresponded to the racist motivation of the defendant carrying out the attack. Can I ask you, Judge Sullivan's permission, about the aggravating factor regarding injuries to other victims? Other than the one case that you cite, which the government argues is distinguished in any event, it seems to me you can correct me if I'm wrong. In every other death penalty case, capital case, where there's been murder, whether it be mass shooting, terrorist attack, whatever it might be, if there's injuries to other victims, that that comes in under the circumstances of the capital offense. You know, in the Misali case, for example, you know, the 9-11 conspiracy, there was lots of testimony about people who were injured. Thousands of people were injured. And your position is that it can't be instructed that they can consider people who are injured in addition to the people who died? That seems like a quite remarkable rule of law for a statute that says any other aggravating factor and determines it under a relevant standard. So we have a statutory argument on that, Your Honor, which is that when 3593A uses the phrase the effect of the offense on the victim, it means, and the government has conceded the first premise, it means the capital offense, which in this case, and in virtually every case, will have a deceased homicide victim. Based on the specific general canon, we contend that Section 3593A's specific authorization is limited to the deceased victims of capital offenses and that aggravating factors relating to the injuries to surviving victims of non-capital offenses are barred. That doesn't mean, that doesn't mean that this evidence is not coming in. It absolutely is. The jury can't consider it on the issue of, right, of the issue of death? No, Your Honor. The jury is absolutely able to consider the injuries pursuant to the statutory aggravating factor that Jenjun's actions caused a grave risk of death and the statutory aggravating factor that he attempted to kill more than one person in a single criminal episode. So you're saying it would allow the victims who were injured, for example, in the 9-11 case, to come in and talk about all their injuries, physical injuries, psychological injuries, under those factors, or not? Or be limited to what they experienced at the time? I think there could, there would be, there would likely be some marginal disagreement about the scope of the testimony and how attenuated from the events of the offense that testimony could permissibly be. But no, in this case, we acknowledge that the surviving victims can absolutely testify about what happened. They can testify about the nature of their physical injuries in support of two properly alleged aggravating factors. To go back to my initial question, are you aware of any other case in the history of the United States other than the Gooch case, where a district court has limited the ability of people who were injured to testify about their injuries, psychological, physical, as part of an aggravating factor? Yes, I think the government overstates the extent of support for its position on this point. In addition to Gooch, there is the Middle District of Tennessee's decision in Shakir, which was cited in our brief, and the District of Massachusetts' decision in Sampson, also cited in our brief. I would also point out that a number of the cases that the government has identified as those in which surviving victim impact testimony was presented, such as McVeigh, were cases in which the parties didn't join issue on the point. And so those cases can't, we don't think, be regarded as precedent. Again, we don't think there's anything inequitable about what Judge Gallardo did here. He made clear that a ruling striking an aggravating factor is not the same as a ruling excluding evidence. The victims, the surviving victims, will testify at the guilt phase in support of the attempt to kill hate crime offenses. They can testify if the government calls them at the penalty phase in support of the grave risk and multiple attempted killings aggravators. And they can speak again at non-capital sentencing. I just want to make sure I understand the statutory structure that you understand it in support of this argument. So you read Section, the May include testimony, that that limits, that that is an overall limit on any aggravators that seem to be broadly allowed within Sub-A. So what I would, our reading of the statute is as follows. We acknowledge the general language in 3592C that says government may provide notice for any other aggravating factor. We then turn to, it says notice as provided in 3593. We then turn to 3593 to see how notice is provided. And that provision tells us that notice may include factors relating to the impact of the offense on the victim. We think that the clear historical antecedent of this provision is pain, which approved the admission of victim impact evidence related to a murdered victim and that victim's family. And we think that the consistent usage of the term victim across the statute means homicide victim. In light of that reading, we think, and I think Justice Scalia's opinion in RAD LAX is very good on this point, that the general specific canon governs. And so that where there is a general authorization of the type found in 3592C alongside a specific authorization of the type found in 3593A, the latter, the specific authorization governs because it speaks more directly to the question presented. So under 3953A, you have sub 2, which says setting forth the aggravating factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death. That's a general provision for any noticed aggravating factor? Yes. And then you read the indented language under that as limiting to only murdered victim impact. When it comes to aggravating factors concerning victim impact, when it comes to aggravating factors falling under that general rubric of victim impact, we read that language as a specific authorization that controls the general permission to allege a wide range of non-statutory aggravating factors. And so our argument does depend on that construction. It depends on the construction of victim in 3593A as homicide victim. All right. I'm sorry, may I ask one question? Sure. On inciting violence, I had it in my head a moment ago. Well, that's okay. I'll just come here. May I just? That's fine.  I did have a question on that, too. Sure, sure. That'll give me a moment to get my head. So similar to the racial animus question, I guess, in the sense that why shouldn't a jury be able to say, let's separately consider whether it's a crime, rises to the level of a crime of incitement under the Brandenburg test or not, that the motivation was to inspire other people to consider, to commit mass murders. Why is that an impermissible consideration? It seems to me, again, under this broad standard of what relevant, regarding the circumstance of the offense, that someone who's trying to inspire other people to commit mass murders, and the government cites other cases, the Supreme Court case, I think it was Barclay, where that was noted by the Supreme Court, desire to start a race war. What's wrong with that? The crime here is the mass murders, the inspiring, inciting, whatever word you use. I don't think it should depend on whether you use the word incitement versus inspire. It's part of the motivation. What's wrong with that? I agree it doesn't turn on the word used. It turns on the substantive constitutional principles at stake. But why would it be the rise to the level of separate crime? Even if it wasn't imminent, it could still be more reprehensible that someone wanted to commit the attack or they wanted to inspire more mass murders. Isn't that, whether it rose to the separate level, rose to the level of a crime or not, still relevant? And so the district court's analysis on this point was straightforward and correct. The district court concluded that as a matter of law, the evidence that the government proposed to adduce to prove incitement did not rise to the level of incitement within the meaning of the Brandenburg test. The government made a fulsome evidentiary proffer, the district court made that ruling, and the government hasn't appealed that ruling. So as the case comes to this court, the question is whether First Amendment-protected communicative activity can form the basis for aggravation in a capital case. So as Judge Villardo pointed out, I have ruled, and the government has not here appealed, that this evidence cannot prove the attempted incitement aggravating factor because it does not rise to the constitutional level. So what I'm left with is the communicative activity alone as the aggravating factor, and that's prohibited by clear precedent. Why is it the communicative activity alone as opposed to the motivation for the murder? I mean, as Judge Bianco suggested, there's a sort of parallel structure with the racial motivation. You took a categorical position there, so I suspect you take a categorical position. So it's not how this particular aggravator is drafted alone. So if it said the defendant attempted to incite violent action by others, would that be an appropriate aggravator, even if the government couldn't establish imminence? So again, as I indicated in my discussion of the race aggravating factor, to the extent that this is a drafting problem, the remedy is, or the correct disposition in this Court, is to affirm the ruling with the government having the opportunity, if it chooses, to draft a different non-statutory aggravating factor subject to 3593a in the district court, the parties to litigate that aggravator. But on the merits, Judge Nathan, I think the issue is this, and Judge Gallardo made this clear, communicative activity that is First Amendment protected simply cannot, under, for example, this Court's decision in Witten, be the basis to aggravate a sentence from life to death. Why not? The race animus is also First Amendment protected. Assuming, you know, putting aside the anti-discrimination provision, you can then make that same argument for racial animus. It's all First Amendment protected. If that's the only basis for the aggravating factor, they can't consider it. And I would suggest that that's clearly wrong. So what's the difference? If it's being used for motive, even if it's completely protected speech, they're still showing motive for a capital offense, and I don't see any First Amendment problem with that. We've said in other contexts, non-capital contexts, that something that's First Amendment protected, the Winstead case, if it goes, you know, to a permissible factor, is not problematic. Right. So what's the difference? And so the question would be whether the government is capable of drafting a permissible factor, for example, one drawn to motive in the manner that Judge Nathan has suggested. Why isn't this one drawn to motive here? It's attempted to incite. That goes to motive, doesn't it? I don't understand why this isn't as currently drafted. I think as drafted it, what it invites the jury to do, what it asks the jury to do, is to conclude that Gendron's protected communicative activities are a basis for an aggravated or an enhanced sentence. And we simply know, and Witten makes this point, Right. But, yeah, if it's, he committed a murder and he has the, and he wants violence incited, see his unrelated writings from his diary prohibited, because that's an aggravator based purely on the protected speech. But if inciting violence, wanting to cause others to engage in violence, if we take out the technical term of incitement, is about an aggravating motivation and is not about the protected speech alone, as I understand it. And I think the cases you're relying on should be understood in that unrelated, disaggregated set of categories. Well, I understand the Court's point. I think I would just say that this Court has incorporated the language from Zant v. Stevens to say that when a jury is asked to draw an aggravating inference or an inference in support of an aggravating factor to justify a death sentence on the basis of constitutionally protected conduct, due process would require a vaguer sentence. And that's the principle that we would urge here. Judge Sullivan, if I can have 30 seconds to come back to the racial bias aggravator. I'm an indulgent presider, okay? 30 seconds. Thank you. Let no one ever say you were not indulgent. The... It's remanded. It's remanded. Short memory. The colloquy that has taken place today concerning this aggravating factor tells us that the factor as written simply cannot be presented to this jury because it will invite the most problematic, textually problematic, perhaps even constitutionally problematic, argument by the government and invitation to the jury to draw inferences in aggravation that Congress has foreclosed. This Court should affirm Judge Villardo's ruling striking the aggravator as written. If this Court wants to provide some guidance as to how a different aggravating factor might obviate these statutory concerns, that's within this Court's discretion. This Court should not take the step of drafting such an aggravator because, as I noted, that would implicate separation of powers concerns. And it should remand this case to the district court so that the government, if it chooses, can try a different aggravating factor in conjunction with, perhaps, an instruction that would make clear to the jury what it can and cannot do. But this Court's remit is simply to affirm. All right. Thank you, Mr. Hervey. Lee will hear from you for two minutes of rebuttal. Thank you, Your Honor. And my apologies if you felt that I was trying to be obstructionist or stubborn about... Dissembling, maybe, but...  I don't take it personally, but I just do answer the questions. And I appreciate that. I think the difficulty in this is just to try and articulate the point that 3593F has to do with neutralizing the jury's or each individual juror's own particular biases. It's a fail-safe that Congress wants to ensure that when it comes to the ultimate selection of penalty, the jury is not going to be, well, because the defendant is this or because any of the victims were that. That is going to put the thumb on the scale in terms of their decision-making, death or not death. That is what that provision does. It does nothing to limit under 3592C the non-statutory aggravating factors which the government may allege. Well, it may do something to limit it. That's really the question, whether on a collision course. And so I think the question put to you was, if the aggravating factor said, you can consider the race of the victims and the race of the defendant if you think that white-on-black crime is historically terrible. You can't do that, right? That's correct. You cannot do that, right? You cannot allege a factor that is, for example, in this case... But just as before, you were suggesting that you wouldn't even go that far, that the jury was free to decide that white-on-black violence is worse than black-on-white violence. No, and I misspoke there. What I meant to say was, if you were to change the races of the defendants and victims and still allege a racist motivation... You did answer that to my question, if you changed the races, and you said the government would have the same position. But I wanted to make sure I understood that because you did answer Judge Sullivan's question as to whether the jury could consider, for example, historic racism and therefore because... No, and the answer is no, right? Because no, that has nothing to do with the factors of the case. All the sentencing aggravators need to be tied to the relevant circumstances of the offense, and so the answer is no. Turning to the surviving victims, again, similarly, there is nothing in 3593 which limits the ability for the government to allege injuries caused by Gendron to the three victims here as an aggravating factor to be considered in order to determine what makes Gendron's offense more blameworthy in order to warrant the death penalty. And then finally, with respect to the attempt to incite violence factor, again, this is purely motive evidence which the government is seeking to submit. And the reason why we use the word incite is because that's the word Gendron used. He wanted to incite violence and retaliatory action and inspire similarly like-minded people to follow in his stead, as he was inspired by the Christchurch shooter, and that's why he live-streamed his event, his mass shooting at the top supermarket. So ultimately, Your Honor, my apologies for walking down and answering that question incorrectly. The fact of the matter is 3593F is directed to neutralize any racism or bias that a jury may possess. They do the step right at the end, and it has nothing to do with the district court's ability to insulate the jury from hearing anything about race, which is not, and what our case is about, is wholly Gendron's racist motivation in terms of what was in his mind, the why he wanted to commit the conduct that he did. Well, I mean, I guess then that brings us back to the question where we started, which is whether or not the factor as written by the government does that in a way that's confusing, and Judge Pallardo was justified in saying, no, you're straying into 3593F because you expressed that you talk about the victims effectively, right? The race of the victims. Well, we talked about the race of the victims. 3593F does not say anything that the jury would, you know... 3593F does not direct the district court to say, to gatekeep in that manner and say, well, anytime I see a race being mentioned in an aggravating factor, then I'm going to have to insulate the jury from any consideration of that type of evidence because... What's the prejudice to the government if we were to conclude that it's poorly drafted, raises additional risks that would otherwise not exist? Mr. Levy suggested we would remand, the government would amend the notice, maybe there'd be some more litigation. What's the prejudice to the government? Because the prejudice will be that my friends would argue that it is out of time, that any changes, that there is no good cause, that we should have, you know, correctly alleged the aggravator in a specific manner. Why would it be out of time? If there's good cause, assuming there's good cause, it wouldn't be out of time then, right? The concern is we do have a jury selection questionnaire that's going out in 3 weeks, and the first juror is supposed to be voir dired in August, so that we might have that argument in terms of we're cutting too close and you're out of time. But that said, I would want to note, for the record, we did offer a limiting instruction in district court. The district court opted to strike the factor, so... What was the limiting instruction? We don't recall right now, so... But we are happy if it would help illuminate the issue to provide the proposed limiting instruction in a supplemental brief to this court, if so ordered. But ultimately, this factor actually mirrored the factor as alleged in the Dillon Roof case involving the South Carolina shooter of the black church. Unless this court has any further questions, the government rests on its brief. All right. Thank you both. We will reserve decision.